Battle, J.
 

 The 12th section of the 68th chapter of the Rev. Code enacts that, “In all cases where a license is applied for to marry a female whose parents or guardian reside without the State, the person applying shall produce to the clerk of the county court, or any other person legally authorised to grant license to marry, a certificate in writing, under, the hand
 
 *242
 
 of the parent or guardian of the said female, (as the case may he,) stating she has arrived to the full age of fifteen years, and if under that age, that she has leave to marry; which certificate shall be filed in the clerk’s office in the county where the license was obtained.” This section was taken from the 9th section of the 71st chapter of the Rev. Statutes, and that from, the act of 1820, (chapter 1041, sec. 5, of the Rev. Code of 1820.) The original act of 1820 was entitled an “Act concerning the marriage of infant females.” The 1st section made it an indictable offense in a man who should marry an infant female under fifteen years of age, without having previously obtained the consent thereto of her lather in writing; and the three following sections made provision for the court in which the offence should be tried, and for the disposition of the infant female’s estate consequent upon the conviction of the husband. The 5th section then enacted as follows: “ That in all cases where a license is applied for to marry a female whose parents or guardian reside without the limits of this State, it shall be the duty of the person so applying, to produce to the clerk of the county court, or any other person legally authorised to grant a license to marry, a certificate in writing from under the hand of the parent or guardian of the said female, as the case may be, stating that she has arrived at the full age of fifteen years, and has leave to marry; which certificate shall be filed in the clerk’s office in the county where the license was obtained.” The 6th section imposed a penalty of a $1000 on any clerk who should issue a license contrary to the provisions of the act. The four first sections are contained, substantiatly, if not literally, in the 47th section of 34th chapter, and the 7th and 8th sections of 71st chapter of the Rev. Statutes; and the 5th and
 
 6th
 
 sections are copied, verbatim, in the 9th and 10th sections of the latter chapter of the Bev, Statutes. The 12th section of the 6Sth chapter of the Bevised Code is identical with the 5th section of the 1041st chapter of the Revised Code of 1820, and the 9th section of the 71st chapter of the Bevised Statutes, in requiring a certificate in writing from the parent or guardian,
 
 *243
 
 to be produced to the clerk who issues a license for the marriage of the female whose parents or guardian reside in another State, stating that she has arrived at the age of fifteen, years; and it differs from them only in requiring it to be stated in the certificate, if the female be under fifteen years of age, that she has the consent of her parent or guardian. The act was manifestly intended to prohibit the marriage of persons running away from another State and coming into this State to be married where the written consent of the parent or guardian had not been previously obtained. That neither of the acts was intended to embrace the ease of any other female than one under twenty-one years of age, is obvious from the use of the terms “parents or guardian,” but that the original act of 1820, the Revised Statutes and the Revised Code, all were intended to apply to all females under the age of twenty-one years, although over fifteen, is expressed in language too plain to admit of a contrary construction.
 
 We
 
 may doubt the policy of putting females over fifteen and under twenty-one years of age, coming from other States, upon a different footing from those whose parents or guardian reside here, but where the Legislative will is clearly expressed in any matter within the limits of the constitution, we are bound to give effect to it.
 

 The case comes before us upon an appeal by the plaintiff, from a judgment of nonsuit, submitted to in deference to the opinion of his Honor in the court below, upon a question set out in the bill of exceptions, and we think that the opinion expressed in relation to that question, was erroneous. But it appears to us that from the 48th section of the 35th chapter, and the 13th section of the 68th chapter of the Rev. Code, that the present action, brought in the name of the father, for the penalty given by the said 13th section, ought to have been brought in the name of. the State. This objection has not been urged in this court. The question has suggested itself to us whether we are not bound to notice it as it appears upon what is called the record proper, in contradistinction to the bill of exceptions. If the plaintiff had obtained a verdict
 
 *244
 
 and judgment in the court below, and had ashed for its affirmance here, it would have been our duty to notice it, whether taken by counsel or not, because by the act under which this Court is constituted, the judges are required to “render such sentence, judgment and decree, as on inspection of the whole record, it shall appear to them ought in law to be rendered thereon.” (See Rev. Code, ch. 33d, sec. 6th.) Under that provision, we would not feel ourselves at liberty to render a final judgment to which we could see, the plaintiff was not entitled. But, in the present case, the plaintiff does not, and cannot, ask for any final judgment. He only seeks to have a reversal of a judgment of nonsuit which was erroneous with reference to the particular objection made in the court below, and our decision either way would not be final with regard to the merits of the matter in contest, though it might have an important bearing upon the costs of the litigation, or the statute of limitations. He urges that if the obj ection had been taken in the court below, he might have asked for, and possibly, if not probably, have obtained leave to amend upon such terms as the court might think proper to prescribe, and that he might thereby prevent the effect of the statute of limitations, should it be pleaded against him. These are weighty considerations, and they lead us to the conclusion, that, in a case like this, we are not bound to notice, and indeed ought not to notice, any other objection than that which appears from the bill of exceptions to have been taken in the court below, and upon which the judgment of nonsuit was ordered. 'When the case goes back the parties will stand just as they did before the erroneous judgment was rendered.
 

 Ihe judgment is reversed, and a
 
 venire de novo
 
 awarded.
 

 Pee Cdeiam, Judgment reversed.